RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 15a0190p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

—————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 14-1887

MICHAEL JEROME HENRY,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:11-cr-20233—Robert H. Cleland, District Judge.

Argued: August 7, 2015

Decided and Filed: August 14, 2015

Before: CLAY and SUTTON, Circuit Judges; WATSON, District Judge.[*]

—————————

**COUNSEL**

**ARGUED:** Judy Bao, FEDERAL APPELLATE LITIGATION CLINIC, Ann Arbor, Michigan, Melissa M. Salinas, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Toledo, Ohio, for Appellant. Kenneth R. Chadwell, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee. **ON BRIEF:** Judy Bao, FEDERAL APPELLATE LITIGATION CLINIC, Ann Arbor, Michigan, Melissa M. Salinas, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Toledo, Ohio, Dennis G. Terez, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Cleveland, Ohio, for Appellant. Kenneth R. Chadwell, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee.

—————————

[*]The Honorable Michael H. Watson, United States District Judge for the Southern District of Ohio, sitting by designation.

1

_____

**OPINION**

_____

SUTTON, Circuit Judge. Three bank robberies, two confessions, one defendant, and an assortment of firearms charges make up this case. Michael Henry confessed to the first two robberies but disclaimed any involvement in the third. The jury found that Henry committed all three robberies. The jury also convicted Henry of using a firearm in each robbery—not because he carried a gun but because his associate did. Because the prosecution failed to prove everything needed to pin the associate's gun on Henry in the second and third robberies, *see Rosemond v. United States*, 134 S. Ct. 1240 (2014), we reverse those convictions. We affirm Henry's other convictions.

On the morning of September 22, 2009, Henry and an unknown compatriot arrived at a Chase Bank branch in Ypsilanti, Michigan. Their faces were covered, and they wore gloves. Clutching a BB gun, Henry jumped over the counter and demanded cash while his associate stood nearby with a real firearm. The deed was short and sweet: The two disappeared a minute later, taking $4,382 with them and shedding clothing and paraphernalia as they escaped.

A month and a half later, on the morning of November 6, 2009, Henry and an unknown associate robbed a Bank of America branch in Ann Arbor, Michigan. The two men covered their faces with bandanas, and Henry wore gloves. Henry once again jumped over the counter and demanded cash, while his compatriot held a weapon and stood near the door. This deed was shorter and sweeter: It took around 30 seconds and yielded $23,179. Once again, the two discarded various items of clothing as they fled.

On the morning of October 21, 2010, two men robbed the same Ann Arbor Bank of America branch. Both were masked and wore baggy clothing. Again, one robber jumped the counter, while the other stood a bit back and fired shots into the air. The counter-jumper wore gloves and a distinctive blue ski mask. This robbery took a bit more time (41 seconds) and yielded less money ($11,966). The robbers shed clothing and other items, including the blue ski mask, as they escaped.

Police eventually identified Henry as one of the robbers. He confessed to the first two robberies but not the third. A grand jury indicted him for committing all three robberies and for three firearms charges to boot. 18 U.S.C. § 2113; *id.* § 924(c). Notwithstanding his confession, Henry pled not guilty to all of the charges brought against him. The jury credited Henry's confession and then some: It convicted him of committing all three bank robberies and all three firearms offenses.

The judge sentenced Henry to more than 60 years in prison.

On appeal, Henry challenges the firearms conviction from the second robbery and the robbery and firearms convictions from the third robbery.

*Henry's firearms conviction arising from the second robbery.* The firearms statute applies to "any person who, during and in relation to any crime of violence . . . , uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm." 18 U.S.C. § 924(c). The government charged Henry with aiding and abetting a violation of the statute because Henry's compatriot, not Henry, possessed the firearm during the robbery. *Id.* § 2(a).

*Rosemond v. United States*, 134 S. Ct. 1240 (2014), spells out the proof required for the intent element of aiding-and-abetting liability in this setting. "[I]ntent must go to the specific and entire crime charged"—"the full scope (predicate crime plus gun use) of § 924(c)." *Id.* at 1248. An accomplice thus must have "advance knowledge" that a firearm will be used in connection with the underlying crime because he must "cho[ose] . . . to align himself with the illegal scheme in its entirety—including its use of a firearm." *Id.* at 1249. Absent such advance knowledge, the necessary intent is missing.

Unfortunately for the government and for the district court, *Rosemond* was decided *after* Henry's trial. Unfortunately for Henry, his lawyer did not challenge the relevant jury instruction and thus did not ask the judge to include an advance-knowledge requirement. All of this means that plain-error review applies to the alleged error. Fed. R. Crim. P. 30(d), 52(b); *United States v. Olano*, 507 U.S. 725, 734 (1993); *see United States v. Houston*, No. 14-5295, 2015 WL 4114604, at *2 (6th Cir. July 9, 2015). Under that standard, we may correct the claimed mistake only if there is (1) an error (2) that is plain, (3) that "affected the [party's] substantial rights," and

(4) that "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Puckett v. United States*, 556 U.S. 129, 135 (2009) (internal quotation marks omitted). Henry meets each condition.

First, the jury instruction was wrong. With respect to the intent requirement, the instruction required only that Henry "intend[ed] to help commit or to encourage the crime." R. 84 at 46. *Rosemond* clarifies that intent must go to the *entire crime*—that Henry intended to aid in an *armed* bank robbery. 134 S. Ct. at 1248, 1251. The court never instructed the jury that Henry had to have *advance knowledge* that a (real) firearm would be used. *Id.* at 1249. As a result, the jury could have convicted Henry of violating § 924(c) merely because he "intend[ed] to help commit or to encourage" the predicate offense—the bank robbery—without ever finding that he had the requisite intent and advance knowledge related to his compatriot's firearm possession.

*Rosemond* invalidated an instruction similar to this one. That instruction allowed a conviction merely if "the defendant knew his cohort used a firearm in the [predicate] crime." *Rosemond*, 134 S. Ct. at 1244. We recently held that a similar jury instruction—also without an advance-knowledge requirement—violated *Rosemond*. *See United States v. Richardson*, Nos. 13-2655 & 13-2656, 2015 WL 4174809, at *14 (6th Cir. July 13, 2015).

Second, the error was plain. We gauge the obviousness of an error from "the time of appellate consideration," not from the perspective of the time of trial. *Henderson v. United States*, 133 S. Ct. 1121, 1130–31 (2013) (internal quotation mark omitted). As just shown, *Rosemond* seals the fate of this instruction—and clearly so.

Third, the error affected Henry's substantial rights. When the causation question "turns on the state of mind" of the defendant and there is evidence pointing both ways, it will often be the case that the error affects substantial rights. *See United States v. Miller*, 767 F.3d 585, 600 (6th Cir. 2014); *see also Houston*, 2015 WL 4114604, at *4. In his lengthy confession, Henry never said that he knew in advance that the second robbery would be an *armed* robbery. When shown the gun carried by his partner in that robbery, Henry indicated that he thought it was a real firearm. But that was after the fact. Henry never said he knew ahead of time that a real firearm would be used during the robbery. The jury could have accepted two theories of innocence on

this record.  It could have found that Henry thought only a toy gun—not considered a firearm under § 924(c), *see* 18 U.S.C. § 921(a)(3)—would be used in the robbery.  (Recall that a BB gun, treated as a toy for these purposes, was used in addition to a real firearm during the first robbery.)  Or it could have found that Henry thought his compatriot would not carry a toy gun or a real one in the robbery.  Either finding would lead to an acquittal after *Rosemond*.  That creates a "reasonable probability" that the flawed state-of-mind jury instruction led to a flawed conviction.  *United States v. Marcus*, 560 U.S. 258, 262 (2010).

Fourth, the error seriously affected the fairness, integrity, or public reputation of judicial proceedings.  While this prong of the inquiry speaks in terms of discretionary standards, not hard-and-fast rules, we have no problem applying it here.  This second firearms conviction added 25 years to Henry's sentence.  Because Henry had one (unchallenged) conviction under § 924(c) for the first bank robbery, the mandatory minimum penalty of 25 years kicked in for this second firearms conviction.  18 U.S.C. § 924(c)(1)(C)(i).  No such automatic sentence should exist for a crime that a reasonable jury could conclude Henry did not commit.

The government treats Henry's appeal on this score as challenging the sufficiency of the evidence, not the sufficiency of the jury instruction under *Rosemond*.  The confusion is not unwarranted as there is some overlap between the two points.  All of the briefs and arguments considered, however, they fairly raise a challenge to the jury instruction under *Rosemond*.

Even under plain-error review of the jury instruction, the government adds, there is some evidence that Henry had advance knowledge that his colleague planned to use a firearm in committing the robbery.  Maybe so.  But the question is whether there is a "reasonable probability" that the jury would not have inferred advance knowledge had the court given proper instructions.  *Marcus*, 560 U.S. at 262.  That Henry was not "surprised" and did not "hesitate[]" when his associate pulled out the gun during the second robbery, Appellee's Br. 15, does not confirm that a properly instructed jury would have found advance knowledge, *see Rosemond*, 134 S. Ct. at 1249, 1250 & n.9.

This case also differs from *Richardson*, where we held that a *Rosemond* mistake in the jury instruction was harmless.  That defendant was a planner, facilitator, and driver for several armed robberies, and testimony from various witnesses showed that Richardson had advance

knowledge that they would be *armed* robberies. *Richardson*, 2015 WL 4174809, at \*15. No comparable evidence exists here.

*Henry's bank-robbery conviction arising from the third armed robbery*. Henry attacks his conviction for the third robbery on three fronts. None is persuasive.

He first claims that the trial court improperly allowed the government to rely on evidence of similarities between the first two robberies and the third robbery under Evidence Rule 404(b) to prove Henry's identity in the third robbery. Yet other evidence—such as DNA evidence and Henry's statements—amply supports Henry's conviction for the third bank robbery, making any error (if error there was) harmless. *See Neder v. United States*, 527 U.S. 1, 19 (1999).

He next claims there was insufficient evidence to convict him of the third bank robbery. In reviewing this challenge, we look at "the evidence in the light most favorable to the prosecution" and ask whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979). Even if we disregard the similar-crimes evidence, plenty of other evidence proves that Henry was the man who jumped the counter at the third bank robbery. DNA evidence points to Henry as the counter-jumper. A substantial amount of Henry's DNA (ten times the amount of any other person's DNA) was found on the blue ski mask used and discarded by the counter-jumper in the third robbery. The jury also listened to Henry's conversation with police officers and detectives, in which he confessed to the first two bank robberies and discussed facts surrounding the third. Two eyewitnesses testified about the physical characteristics of the counter-jumper, which correspond to Henry's profile. Viewed in the light most favorable to the government, these facts suffice to prove beyond a reasonable doubt that Henry committed the third robbery.

Henry protests that *United States v. Collon*, 426 F.2d 939 (6th Cir. 1970), shows a "single piece of forensic evidence is insufficient to support a conviction." Reply Br. 9. That case addressed a less-reliable form of evidence than DNA—fingerprints—and at any rate we need not rely on a single piece of evidence to support the sufficiency analysis.

Henry claims that the district court erred by failing to sever the trial for the third robbery from the trial for the first two robberies. He never raised the point below, and he cannot satisfy

the requisites of plain-error review.  The key problem is that, even had there been separate trials, two pieces of evidence would have come in and sufficed to support Henry's conviction for the third robbery: the DNA-laden mask and Henry's statements.

*Henry's firearms conviction arising from the third robbery.*  Henry was also unarmed during the third bank robbery.  Here too his attendant firearms conviction could rest only on a theory of aiding and abetting.  Here too the conviction turned on an instruction that did not account for *Rosemond*.  And here too Henry did not raise the point below.  Henry raised the *Rosemond* argument as to this conviction for the first time at oral argument, and the government (to its credit) agreed that we should address whether this conviction suffers from a plain-error problem.  It does.  As with the second robbery, a "reasonable probability" exists that the jury could have found that Henry lacked advance knowledge that a firearm would be used in the third robbery.  *Marcus*, 560 U.S. at 262.  While Henry stated in his confession that he knew the plan for the third bank robbery before it occurred, nothing in the record says that the plan included a firearm.  Henry's cohort, it is true, used a long gun in the third robbery.  And a long gun, it is also true, might have been easier for Henry to know about before the robbery than the pistol used in the second robbery.  But all of this would depend on facts that the parties had no reason to focus on in presenting the evidence and that the jury had no reason to consider:  Where was the rifle while the two were traveling to the bank?  Was the rifle visible to Henry while the two were en route, or had his cohort hidden it?  When (if ever) did Henry realize that a rifle would be carried by his associate?  Is it possible that Henry first became aware that a firearm would be used in the robbery well after the robbery began—when his compatriot began firing the rifle into the air?  On this bare record, a properly instructed jury could have found an absence of beyond-a-reasonable-doubt evidence that Henry had advance knowledge that a gun would be used.  *Rosemond*, 134 S. Ct. at 1250–51.

For these reasons, we reverse Henry's firearms convictions in the second and third bank robberies, affirm his other convictions, and remand the case for further proceedings.