NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0046n.06

Nos. 14-5099 and 15-5515

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED**<br>Jan 25, 2016<br>DEBORAH S. HUNT, Clerk |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| QUINCY MAURICE FUQUA, | ) | COURT FOR THE MIDDLE |
| | ) | DISTRICT OF TENNESSEE |
| Defendant-Appellant. | ) | |
| | ) | |

Before: GRIFFIN and KETHLEDGE, Circuit Judges; and CLELAND, District Judge.[*]

KETHLEDGE, Circuit Judge. A federal jury convicted Quincy Maurice Fuqua of possession with intent to distribute marijuana, possession of a firearm in furtherance of a drug-trafficking crime, and being a felon in possession of a firearm. *See* 21 U.S.C. § 841(a)(1); 18 U.S.C. §§ 924(c), 922(g)(1). On appeal, he argues that the district court committed numerous errors regarding his trial and sentence. We reject his arguments and affirm.

I.

In February 2010, the Nashville police searched the trash behind Fuqua's house. They found trace amounts of marijuana in numerous containers within the same trash bag, seven smoked marijuana blunts, and a gun holster. They also found a receipt from the week before,

---

[*]The Honorable Robert H. Cleland, United States District Judge for the Eastern District of Michigan, sitting by designation.

mail with Fuqua's address on it, and paperwork with Fuqua's Social Security Number on it. The next day, Detective Matthew Grindstaff presented a magistrate judge with an affidavit detailing the items found in the trash, explaining that the police had information that Fuqua's phone number was being used to deal drugs and that illegal drugs were being sold, packaged, or consumed at Fuqua's address. The affidavit added that the police had surveilled Fuqua's house and seen two cars parked out front, both of which were registered to Fuqua. The magistrate judge issued a warrant authorizing the police to search Fuqua's house for evidence of drug use and distribution.

Around midnight that same night, a group of officers went to Fuqua's house to execute the search warrant. According to the officers' testimony, an officer turned on the emergency blue lights on a patrol car outside the house and used its PA system repeatedly to announce "Metro Police, search warrant, do not resist." Meanwhile, Detective Grindstaff knocked three times on Fuqua's door, each time announcing "Metro Police." When no one promptly answered, Detective Atif Williams broke down the door. Grindstaff stepped forward to enter and continued to announce himself. While in the doorway, he heard a gunshot and saw one person on the couch by the door with his arms up. Grindstaff moved toward the kitchen, where he saw Fuqua and Victor Owens each holding guns. Fuqua and Owens ducked behind a wall; then someone reached around and shot at Grindstaff. Grindstaff ducked and fired back, hitting Fuqua in the stomach. Grindstaff and another officer secured Owens and searched Fuqua. They found around $1,640 in cash in Fuqua's pockets. The police called paramedics, who took Fuqua to a hospital.

When the officers searched Fuqua's home, they found 19.5 grams of marijuana and two ecstasy tablets inside a piece of a black plastic bag on the kitchen counter, a set of digital scales, 4.3 grams of marijuana in a clear plastic bag in a drawer in the kitchen, 4.0 grams of marijuana in

a plastic bag on the stereo in the living room, another 2.2 grams of marijuana in a newspaper under the couch in the living room, a poster depicting different kinds of marijuana in the basement, and three guns—including a .44 caliber revolver that Fuqua admitted was his. Fuqua told police that he had fired the gun at the ceiling. But a crime-scene investigator testified that there was no evidence of a bullet in the ceiling.

A federal grand jury later indicted Fuqua for possessing marijuana with intent to distribute, possessing and discharging a firearm in furtherance of a drug-trafficking offense, and being a felon in possession of a firearm. *See* 21 U.S.C. § 841(a)(1); 18 U.S.C. §§ 924(c), 922(g)(1).

Fuqua filed pretrial motions to suppress the evidence obtained pursuant to the search warrant. He also moved to try the § 841(a) charge separately from the other charges. The district court denied both motions.

The jury convicted Fuqua on all counts. After his conviction, Fuqua filed a motion for acquittal notwithstanding the verdict, but the district court denied his motion.

Over several objections, the court sentenced Fuqua to 248 months in prison. Fuqua later moved for a new trial or alternatively a new sentencing hearing. In support, Fuqua claimed to have new evidence that Owens rather than Fuqua fired the second shot, which was the shot fired at Grindstaff as he walked toward the kitchen. The district court denied his motion. Fuqua appealed.

## II.

Fuqua challenges his conviction and his sentence on numerous grounds. We take each in turn.

A.

Fuqua argues that the police lacked probable cause to search his house. Probable cause means a "fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Thomas*, 605 F.3d 300, 307 (6th Cir. 2010) (internal quotation marks omitted).

Here, Grindstaff's affidavit recited that several containers in Fuqua's trash had been in contact with marijuana, that the trash had been put out within the previous week, and that the trash belonged to Fuqua. That information created a fair probability that the police would find evidence of a crime in Fuqua's house, and thus the district court properly denied his motion to suppress. *See United States v. Lawrence*, 308 F.3d 623, 626-27 (6th Cir. 2002).

B.

Fuqua argues that the district court should have tried his § 841(a) charge (for possession with intent to distribute marijuana) separately from the other two charges. "[W]e review a refusal to bifurcate for [an] abuse of discretion." *United States v. Moore*, 376 F.3d 570, 573 (6th Cir. 2004).

Several facts support the district court's denial of Fuqua's motion: the court gave a limiting instruction to the jury about Fuqua's prior felony conviction; the parties stipulated to Fuqua's prior conviction so that its details were not revealed to the jury; and the court instructed the jury to consider each charge separately. Moreover, the guns were relevant to the question whether Fuqua was distributing drugs, so proof that he fired his gun would likely have been presented in support of the distribution charge in any event. The district court's denial of Fuqua's motion was not an abuse of discretion.

C.

Fuqua argues that Detective Grindstaff should not have been allowed to testify as both a fact and opinion witness. On the second day of Fuqua's trial, Grindstaff testified as a fact witness about the searches of the house and trash. The next day, over Fuqua's objection, Grindstaff testified again—this time as an opinion witness—about whether the evidence found in Fuqua's trash and house was consistent with street-level drug trafficking.

Fuqua argues that, as the government's "victim," Grindstaff's opinion testimony was necessarily unreliable. We review a district court's admission of expert testimony for an abuse of discretion. *United States v. Collins*, 799 F.3d 554, 574 (6th Cir. 2015). We have allowed "an officer's dual testimony as a fact and expert witness when [the court gives] an adequate cautionary jury instruction" and there is a clear delineation between the officer's fact and opinion testimony. *United States v. Lopez-Medina*, 461 F.3d 724, 743-44 (6th Cir. 2006).

Here the district court properly instructed the jury about the difference between fact and opinion testimony before Grindstaff's opinion testimony and at the conclusion of trial. And Fuqua's attorney had the opportunity to challenge Grindstaff's credibility and possible biases on cross-examination. Meanwhile, Fuqua cites no precedent to show that allowing a "victim" to testify as an expert is in any way improper. Fuqua's criticisms are grounds for cross-examination, not for excluding Grindstaff's opinion testimony. The district court did not abuse its discretion.

Fuqua separately argues that Grindstaff was not qualified to offer opinion testimony regarding the practices of drug dealers. Opinion witnesses "must be qualified by knowledge, skill, experience, training, or education." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529 (6th Cir. 2008) (internal quotation marks omitted); Fed. R. Evid. 702. We routinely allow police

officers to testify that evidence points to drug distribution rather than to personal use. *United States v. Swafford*, 385 F.3d 1026, 1030 (6th Cir. 2004). That is the kind of testimony that Grindstaff offered here. Moreover, when Grindstaff testified, he had been a police officer for six years. Two of those years were with the "North Crime Suppression Unit," where he "investigate[d] street-level narcotics dealers," and at least one more year was with the "Specialized Investigations Division," where he investigated "people . . . trafficking drugs into the Nashville area." The district court did not abuse its discretion when it determined that Grindstaff could assist the jury in determining whether the evidence found at Fuqua's house was consistent with drug trafficking.

D.

Fuqua argues that the district court improperly admitted the government's Exhibit 8E. That exhibit was a piece of a black plastic bag with multiple ziploc bags inside it. In slight contrast, at Fuqua's home, the piece of black plastic contained multiple pieces of torn and tied plastic with marijuana inside each of them. Agents at the crime lab replaced those torn pieces of plastic with the ziploc bags after they analyzed the marijuana inside.

Fuqua failed to object to introduction of this evidence at trial, so we review only for plain error. *See United States v. Deitz*, 577 F.3d 672, 688 (6th Cir. 2009). We "may correct the claimed mistake only if there is (1) an error (2) that is plain, (3) that affected the party's substantial rights, and (4) that seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Henry*, 797 F.3d 371, 374 (6th Cir. 2015) (internal quotation marks omitted).

The ziploc bags did not have a significant effect on Fuqua's trial. As noted above, so far as the record shows here, agents at the crime lab merely replaced the torn and tied pieces of plastic inside the black bag with ziploc bags that more securely held the same contents. That the agents swapped torn and tied "bags" for ziploc bags did not affect Fuqua's substantial rights.

E.

Fuqua argues that the government failed to prove that he intended to distribute the marijuana found in his home. We view the evidence in the light most favorable to the jury's verdict, and ask only whether any rational jury "could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Castano*, 543 F.3d 826, 837 (6th Cir. 2008).

Here, in Fuqua's house, the police found about 30 grams of marijuana in several different containers and locations, a digital scale next to one of the bags of marijuana, a poster showing different types of marijuana, and three guns. The government also presented evidence that Fuqua had $1,640 in cash in his pocket at the time of the search warrant. Detective Grindstaff testified that the evidence collected at Fuqua's house was consistent with street-level drug trafficking. This evidence and testimony was sufficient to support Fuqua's conviction under § 841(a).

Relatedly, Fuqua argues that, as a matter of law, possession of 30 grams of marijuana without proof of "remuneration" is not a drug-trafficking crime as required for conviction of discharge of a firearm in furtherance of a drug-trafficking crime. *See* 21 U.S.C. § 841(b)(4). The short answer to this argument is that the $1,640 in cash in Fuqua's pocket was proof enough of remuneration. We reject Fuqua's argument.

F.

Fuqua argues that the district court erred by increasing the mandatory maximum of his § 841(a)(1) sentence based on a prior felony-drug conviction. Section 841(b)(1)(D) provides that a defendant who is convicted of possession with intent to distribute less than 50 kilograms of marijuana may be sentenced to a maximum of five years' imprisonment if he does not have a prior felony-drug conviction, and ten years if he has such a conviction. 21 U.S.C. § 841(b)(1)(D). Meanwhile, 21 U.S.C. § 851 provides that

> [n]o person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial . . . the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon.

Here, the government filed a proper "information" detailing Fuqua's prior felony drug conviction in the State of Tennessee. Based on that prior conviction the district court held that Fuqua's maximum sentence for his possession-with-intent-to-distribute conviction was ten years. Fuqua contends that the district court's use of his prior conviction to increase his statutory-maximum sentence violated his Sixth Amendment Rights. We review "a constitutional challenge to a defendant's sentence de novo wherever the defendant preserves the claim for appellate review." *United States v. Churn*, 800 F.3d 768, 780 (6th Cir. 2015).

Fuqua's argument is meritless. In *Almendarez-Torres v. United States*, 523 U.S. 224, 228, 247 (1998), the Supreme Court held that the Sixth Amendment permits judges rather than a jury to find the fact of a defendant's prior conviction. That holding binds us here. Hence this argument is meritless.

Fuqua also suggests that the government's use of § 851 in this case was vindictive. The district court rejected that argument, explaining as follows:

> The Court finds that there is not evidence of either abuse of discretion in filing the 851 enhancement or a vindictive motive. The U.S. Government simply followed the process for filing an enhancement before trial which is done in many trials of this sort, and there was nothing irregular about that process that's in the record.

We have no basis to set aside that finding here. Fuqua's argument is meritless.

G.

Fuqua argues that the district court erred by enhancing his sentence under U.S.S.G. § 3A1.2(c)(1). That section increases a defendant's offense guideline by six levels if, "in a manner creating a substantial risk of serious bodily injury, the defendant . . . knowing or having reasonable cause to believe that a person was a law enforcement officer, assaulted such officer during the course of the offense[.]" U.S.S.G. § 3A1.2(c)(1). "We review de novo a district court's application of the Sentencing Guidelines when that application involves mixed questions of law and fact and we review for clear error a district court's findings of fact in connection with sentencing." *United States v. Stafford*, 721 F.3d 380, 400 (6th Cir. 2013).

Fuqua contends that he did not know that he was shooting at a police officer when he fired his weapon. Per the testimony at trial, however, the police knocked and announced themselves three times before they entered; the officers activated blue emergency lights on a vehicle outside the home; Grindstaff heard people running inside the home; the officers announced "Metro Police, search warrant, do not resist" as they entered the home; all of the officers wore clearly marked uniforms; and Grindstaff saw Fuqua backpedal and fire more-or-less directly at Grindstaff. This evidence supports the district court's finding that Fuqua knew that Grindstaff was a police officer when Fuqua shot his gun.

Fuqua also contends that this finding too should have been made by a jury rather than a judge. In support, he cites *Alleyne v. United States*, 133 S.Ct. 2151 (2013). But we have already

held that "*Alleyne* dealt with judge-found facts that raised the mandatory minimum sentence under a statute, not judge-found facts that trigger an increased guidelines range[.]" *United States v. Cooper*, 739 F.3d 873, 884 (6th Cir. 2014). And the § 3A1.2(c)(1) enhancement only increased Fuqua's guidelines range here. Hence this argument too is meritless.

H.

Fuqua challenges the district court's use of U.S.S.G. § 2K2.1(c)(1) in determining the base-offense level for Fuqua's felon-in-possession conviction. Section 2K2.1(c)(1) provides that, "[i]f the defendant used or possessed any firearm . . . cited in the offense of conviction with knowledge or intent that it would be used or possessed in connection with another offense," and the base-offense level of that other offense is higher than the base-offense level specified in § 2K2.1(a), then the court should use the base-offense level for the other offense. U.S.S.G. § 2K2.1(c)(1).

Here, the district court found that Fuqua used his gun in connection with attempted murder when he shot at Grindstaff as he entered Fuqua's home. Per § 2K2.1(c)(1), therefore, the district court used the base-offense level for attempted second-degree murder (27) in determining the guidelines range for Fuqua's felon-in-possession conviction. *See* U.S.S.G. § 2A2.1(a).

Fuqua challenges that "cross-reference" on three grounds. First he says the cross-reference is contrary to the Supreme Court's holding in *Alleyne*. But again the cross-reference only increased Fuqua's guidelines range, so that contention is meritless.

Second, Fuqua contends that insufficient evidence supports the district court's finding that Fuqua shot his gun at Grindstaff. Grindstaff's own testimony, however, supports the court's finding.

Third, Fuqua contends that the cross-reference was unlawful because he already had a conviction under § 924(c). Fuqua overlooks, however, that the cross-reference here elevated his base-offense level for his felon-in-possession conviction, not his drug-trafficking conviction. The rule that Fuqua seeks to apply bars only enhancement of *a drug conviction* when a defendant already has a § 924(c) conviction in connection with that drug conviction. *See* U.S. Sentencing Commission, Office of General Counsel, *Firearms Primer*, 32 (March 2013) ("If the court imposes a sentence for a drug offense along with a consecutive sentence under 18 U.S.C. § 924(c) *based on that drug offense*, it simply cannot enhance the sentence for the drug offense for possession of any firearm." (emphasis added)). Thus this contention too is meritless. The district court properly applied the cross-reference.

## I.

Fuqua challenges the district court's denial of his Rule 33 motion for a new trial, or in the alternative, a new sentencing hearing. Fuqua first argues that he is entitled to a new trial because he has new evidence that shows he did not fire the shot at Grindstaff. We review the court's denial of a new trial for an abuse of discretion. *United States v. Jones*, 399 F.3d 640, 647 (6th Cir. 2005).

A district court may grant a new trial if: "(1) the new evidence was discovered after the trial; (2) the evidence could not have been discovered earlier with due diligence; (3) the evidence is material and not merely cumulative or impeaching; and (4) the evidence would likely produce an acquittal." *United States v. Heriot*, 496 F.3d 601, 604 (6th Cir. 2007).

Here, Fuqua presented as new evidence two written statements by Owens, who again was the other man who was in possession of a gun when the police executed their search warrant at Fuqua's house. Owens signed these statements in 2014, after the district court had sentenced

Fuqua. In these statements Owens says that he, not Fuqua, fired the shot at Grindstaff as Grindstaff moved towards the kitchen. The district court held that these statements did not entitle Fuqua to a new trial. The court reasoned as follows:

> the most recent statements of Mr. Owens . . . do not rebut any element of the crimes for which the Defendant was convicted—possession of a firearm by a felon; possession and discharge of a firearm in furtherance of a drug trafficking crime; and possession of marijuana with intent to distribute it. To the extent the Defendant argues that the statements would call into question the testimony of Detective Grindstaff, the Court concludes that the statements are merely impeaching, rather than material to Defendant's convictions, and would not likely produce an acquittal had the statements been available at trial.

*United States v. Fuqua*, No. 3:10-00065, (M.D. Tenn. May 5, 2015). This decision was not an abuse of discretion.

Fuqua similarly argues that he is entitled to a new sentencing hearing because, he says, he did not fire the second shot at Detective Grindstaff. In seeking that hearing, however, Fuqua filed a motion for a new trial under Federal Rule of Criminal Procedure 33. And that Rule makes no provision for a new sentencing hearing. *See* Fed. R. Crim. P. 33. Fuqua has not cited any case law that shows otherwise. Hence this argument also fails.

J.

Finally, Fuqua makes some other arguments without citing any case law to support them. But "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *Gradisher v. City of Akron*, 794 F.3d 574, 586 (6th Cir. 2015) (internal quotation marks omitted). Thus we do not address these arguments.

*   *   *

The district court's decisions in this case were both correct and thoroughly explained. Its judgment is affirmed.