NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0034n.06

Case No. 23-5554

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
Jan 27, 2025
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| RANDY READUS, | ) | DISTRICT OF TENNESSEE |
| Defendant-Appellant. | ) | |
| | ) | O P I N I O N |

Before: COLE, WHITE, and DAVIS, Circuit Judges.

COLE, Circuit Judge. Randy Readus helped his cousin, Julius Black, commit multiple armed robberies. While Black carried his firearm to rob the stores, Readus was Black's driver and lookout. After Black pleaded guilty, a jury convicted Readus of aiding and abetting Black's carry or use of a firearm during and in relation to the robbery of a Memphis-area Kroger in violation of 18 U.S.C. § 924(c). On appeal, Readus argues the district court erred by not instructing the jury that Readus must have possessed advance knowledge that Black would use a firearm during and in relation to the Kroger robbery. The government concedes that the district court erred but argues that the incomplete instruction was harmless error. We affirm Readus's conviction.

I.

This case turns on what Randy Readus knew about Julius Black's plan to rob stores while carrying a firearm. Black and Readus are extremely close. They grew up in the same house, as

Black's mother took custody of Readus when Readus's mother passed away. Although they are biologically cousins, Black considers Readus his brother.

Black committed several armed robberies in Tennessee, Arkansas, and Mississippi. After committing multiple robberies by himself, Black enlisted Readus's help. Black told Readus about each of the prior robberies. Each robbery followed a similar pattern: Black would enter a store, select a gift card, bring it to the store clerk at a checkout station, and brandish a firearm while demanding cash from the register. At trial, Black testified that Readus knew he would use a gun during the robberies "because [Black] [didn't] go nowhere without it." (Trial Tr., R. 185, PageID 1257–58.) Black also habitually set his firearm in his lap while traveling by car.

After Black's solo robbery spree, he and Readus planned to rob other stores in the area with Black entering the stores and Readus serving as the driver and lookout. They would drive around a store's parking lot to observe security before parking. When traveling between robberies with Readus, Black would set his firearm on his lap. And when exiting the vehicle to go inside and rob a store, Black would tuck the firearm into his waistband. After Black committed each robbery, he would return to the vehicle, take the firearm out of his waistband, and place it back on his lap.

Black and Readus followed this same pattern for six robberies: (1) a Walmart in Marion, Arkansas; (2) a Walmart in Trumann, Arkansas; (3) a Kroger at 6660 Poplar Avenue in Memphis, Tennessee; (4) a Walmart in Holly Springs, Mississippi; (5) a Kroger on Highway 64; and (6) a Walmart in New Albany, Mississippi. Black would later testify that Readus knew Black was using a firearm during each of these robberies.

This appeal primarily concerns the fifth robbery: the Kroger grocery store on Highway 64 on January 8, 2021. That morning, Readus texted Black that he had found a Kroger that they

should rob.[1]  During the robbery, Black demanded cash from the store clerk at the register and informed the clerk he did not wish to pull his gun.  The clerk told Black he did not need to pull out his gun and handed Black the cash.  As with the other robberies, when Black returned to Readus's car, he removed his gun from his waistband and set it on his lap.

Readus and Black were indicted together on eight counts of robbery-related offenses.  A grand jury then superseded the indictment, adding nine additional counts.  Of particular concern to this appeal are Counts 15 and 16.  Count 15 charged Black and Readus with robbery of the Highway 64 Kroger.  Count 16 charged them with aiding and abetting each other's knowing "use and carry [of] a firearm during and in relation to a crime of violence, specifically the robbery of [the Highway 64] Kroger."  (First Superseding Indictment, R. 54., PageID 114.)

Black pleaded guilty, while Readus pleaded not guilty and went to trial.  After a six-day trial, the jury convicted Readus on all counts against him, including Count 16 for aiding and abetting the use or carry of a firearm during and in relation to a crime of violence.

Readus now appeals his conviction on Count 16, arguing that the district court prejudiced him at trial by excluding a necessary element of the jury instruction for aiding and abetting another person's § 924(c) offense: that the aider and abettor must have had "advance knowledge" that his coconspirator would carry or use a firearm during and in relation to the robbery.  *Rosemond v. United States*, 572 U.S. 65, 78 (2014).

II.

This court reviews the legal accuracy of jury instructions de novo.  *United States v. Blanchard*, 618 F.3d 562, 571 (6th Cir. 2010).  Where, as here, a party does not object to an

---

[1] The two first attempted to rob a different Kroger location, but after the store clerk refused to give Black the money, Readus and Black drove to the Highway 64 Kroger.

instruction, this court reviews the instruction for plain error. Fed R. Crim. P. 52(b). An incorrect instruction amounts to plain error "if there is (1) an error (2) that is plain, (3) that 'affected the [party's] substantial rights,' and (4) that 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *United States v. Henry*, 797 F.3d 371, 374 (6th Cir. 2015) (quoting *Puckett v. United States*, 556 U.S. 129, 135 (2009) (quotation marks and further citations omitted)).

Where there is a "'reasonable probability'" that an incomplete jury instruction led to a flawed conviction, the incomplete instruction affected a defendant's substantial rights and, thus, is not harmless error. *Id.* at 375 (quoting *United States v. Marcus*, 560 U.S. 258, 262 (2010) ("[T]here must be a reasonable probability that the error affected the outcome of the trial.")); *see, e.g.*, *United States v. Richardson*, 793 F.3d 612, 632 (6th Cir. 2015) , *vacated on other grounds*, 577 U.S. 1129 (2016), *reinstated*, 948 F.3d 733, 737 (6th Cir. 2020) ("We begin by reissuing our earlier decision [] affirming Richardson's conviction.").

### III.

The district court erred by omitting a necessary element in its jury instructions. Count 16 charged Readus with aiding and abetting Black's carrying or use of a firearm in relation to the Highway 64 Kroger robbery in violation of 18 U.S.C. § 924(c). To aid and abet another person's § 924(c) offense, the aider and abettor must have had advance knowledge that his coconspirator would carry or use a firearm during and in relation to the robbery. *Rosemond*, 572 U.S. at 78. The district court's instruction did not reflect the advance knowledge requirement from *Rosemond*. Both the government and Readus acknowledge this error.

The parties disagree, however, regarding whether the error affected Readus's substantial rights. *See Marcus*, 560 U.S. at 262. Readus raises two arguments that the flawed instruction

affected his substantial rights, such that there would have been a reasonable probability of acquittal if the district court properly instructed the jury regarding his knowledge. First, he argues that the government was required to show that Readus knew Black would *use* the firearm during the robbery, not merely that he would *carry* it. Second, Readus argues that even if he *could* be convicted of aiding and abetting Black's carrying of the firearm, there was insufficient evidence that he knew Black would do so. We reject each of Readus's arguments.

A.

A person charged with aiding and abetting a principal in the commission of a crime may be punished as if they were the principal. *Rosemond*, 572 U.S. at 70 (quoting 18 U.S.C. § 2). Accordingly, Readus may only be convicted for aiding and abetting crimes for which Black could be punished. Black was charged with and pleaded guilty to using and carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c). And if Readus had advance knowledge that Black would carry or use the firearm, he is similarly culpable for a § 924(c) offense. *Rosemond*, 572 U.S. at 77–78.

Readus argues that he cannot be convicted of aiding and abetting Black's carrying of the firearm because Black *used* the firearm. Thus, according to Readus, the government needed to show that he had advance knowledge Black would use the firearm during the robbery, not merely that he knew Black would carry it while committing robbery. He further argues that, once a person uses a firearm during a crime of violence, that person's use "subsumes the carrying of the firearm during the crime because carrying the firearm is a lesser-included offense of the use offense." (Reply Br. at 3.)

Readus's argument is unpersuasive. The sole legal support Readus offers are citations to cases supporting the proposition that, for a defendant to be convicted of multiple § 924(c) charges,

he must have committed independent acts of using, carrying, or possessing a firearm. *See, e.g.*, *United States v. Rentz*, 777 F.3d 1105, 1109 (10th Cir. 2015). But this is a separate issue from the inquiry in Readus's case. Here, Black could have been convicted of using or carrying a firearm during the Kroger robbery. That he ultimately used the firearm he carried does not preclude being charged with carrying the firearm: they are different theories to establish violation of a single offense. Because Black, as the principal, could have been charged with using or carrying a firearm, Readus could similarly be charged with aiding and abetting that offense on either theory.

Additionally, Readus offers no legal support for his argument that Black's use of the firearm subsumes Black's carrying of the firearm on the basis that "carrying" is a lesser-included offense. While this court has held that a § 924(c) charge is a lesser-included offense of a § 924(j) charge, *see, e.g.*, *United States v. Wilson*, 579 F. App'x 338, 348 (6th Cir. 2014), Readus cites no precedent holding that separate acts within § 924(c) itself—here, carrying and using—are lesser-included offenses of one another. In any event, because § 924(c) criminalizes the using *or* carrying of a firearm during or in relation to a crime of violence, it does not matter which act, using or carrying, Readus aided and abetted. Accordingly, the elements of the offense were established by Black's either carrying or using a firearm during and in relation to the Kroger robbery. That he ultimately used the firearm is of no import to whether Readus could be convicted for aiding and abetting Black's carrying the firearm in violation of § 924(c).

B.

To be convicted of a § 924(c) violation for carrying a firearm during a robbery, one must have carried the firearm "during and in relation to" the offense. 18 U.S.C. § 924(c). And the firearm must serve some purpose, such as facilitating or having the potential of facilitating the offense. *See United States v. Layne*, 192 F.3d 556, 571 (6th Cir. 1999) (quoting *Smith v. United*

*States*, 508 U.S. 223, 238 (1993)). In this context, "in relation to" has an "expansive" meaning. *Smith*, 508 U.S. at 237–38 (internal citations omitted). If an aider and abettor observes a firearm prior to the robbery or is a planner, facilitator, or driver for multiple robberies, that defendant has advance knowledge of the § 924(c) offense. *Compare Richardson*, 793 F.3d at 631–32 (containing evidence that the defendant procured the firearm and drove his coconspirators to several armed robberies), *with Henry*, 797 F.3d at 376–77 (lacking evidence that the defendant had seen the firearm or otherwise knew his coconspirators would carry one). But the accidental or coincidental presence of a firearm and the presence of a firearm after an offense is completed are insufficient for aiding and abetting a § 924(c) violation. *See Smith*, 508 at 238; *Layne*, 192 F.3d at 571.

Here, Black's trial testimony reveals what Readus knew about Black's prior armed robberies and his intentions with the firearm for the Kroger robbery. Readus knew Black always carried a firearm, and Black confided in Readus about the prior robberies. Additionally, Readus witnessed Black carry the firearm on his lap when driving him between robberies and then watched Black tuck the firearm into his waistband before entering a store, returning with cash, and removing the firearm from his waistband as he returned to the vehicle. Readus and Black repeated this approach for multiple robberies.

Considering these facts, any reasonable juror would have voted to convict Readus even if they received the advance knowledge instruction. Although Readus argues that the testimony did not show Readus had prior knowledge that "Black would carry the firearm *to a robbery*," (Reply Br. at 6 (emphasis in original)), no reasonable juror could accept this argument. Black told Readus about several prior robberies, and Readus drove Black to multiple robberies prior to committing the Highway 64 Kroger robbery. And, although Black testified on direct that Readus knew he

would carry a firearm because he always carries a firearm, Black's testimony during cross examination answered the knowledge question more directly:

> [Q]: Okay. Was [Readus] aware that you were using a firearm during those robberies?
>
> [A]: Yes, ma'am.

(Trial Tr., R. 186, PageID 1465.) True, Black did not testify that he explicitly told Readus that the firearm would be carried or used during or in relation to the robbery. The circumstantial evidence regarding Readus's knowledge, however, supports only one conclusion: Readus had advance knowledge that Black would carry the firearm during and in relation to the Kroger robbery.

Moreover, contrary to Readus's arguments, Sixth Circuit precedent does not support his theory. The parties each analogize to two cases: *Richardson* and *Henry*. In *Richardson*, Frank Richardson was convicted of multiple counts of aiding and abetting armed robberies in violation of § 924(c). 793 F.3d at 631. Richardson committed five armed robberies, serving as the planner, facilitator, and driver. *Id.* at 631–32. He also procured the firearm used in each robbery. *Id.* In holding that the inaccurate instruction was harmless error, we explained that there was no "evidence that could rationally lead to a contrary finding with respect to the omitted element." *Id.* at 632 (quoting *Neder v. United States*, 527 U.S. 1, 19 (1999)).

In *Henry*, however, we reversed the defendant's conviction where the district court did not instruct the jury on advance knowledge. 797 F.3d at 374–77. In that case, Michael Henry was convicted of three bank robberies despite a lack of evidence demonstrating he knew, prior to the robberies, that his coconspirators would carry or use a firearm during those robberies. *Id.* at 374–75. In distinguishing *Richardson*, this court found that there was no evidence demonstrating that the defendant was a planner, facilitator, or driver for several armed robberies. *Id.* at 375–76. Moreover, this court identified several relevant pieces of evidence missing from the record. *Id.* at

377. There was no evidence regarding the location of the firearm while the defendants traveled to commit the robbery, whether Henry could see it, or when Henry first realized that his coconspirators would use or carry the firearm during the robbery. *Id.* Thus, the court reversed Henry's convictions for plain error. *Id.* at 377.

The facts in this case are more akin to *Richardson* than *Henry*. Indeed, much of the evidence lacking in *Henry* is present in Readus's trial. Readus drove Black and facilitated the robberies by, on one occasion, entering the store to assess whether law enforcement was present. Additionally, Black testified that his firearm was visible in his lap as Readus drove him to the robberies, and Black would tuck the firearm into his waistband prior to exiting Readus's vehicle to rob a store. They repeated this pattern several times prior to the Kroger robbery underlying Readus's § 924(c) count. As such, unlike Henry, Readus knew the location of the firearm before and after the robbery: he watched Black tuck the firearm into his waistband when he exited the vehicle to carry out the robbery and watched Black return to the vehicle with the gun and the cash.

Despite this circumstantial evidence, Readus argues the jury could have accepted a theory of innocence on the record. *See Henry*, 797 F.3d at 375. According to Readus, the jury could have believed Readus knew Black had a firearm, but he did not know Black would use the firearm during the robbery. And, Readus argues, though he knew that Black had a gun, there was no testimony that the gun would be carried "in relation to" the robbery. (Reply Br. at 5–6.)

The "in relation to" issue poses questions already answered by the jury's verdict, and Readus's arguments on this point are misplaced. The jury was properly instructed on the definition of "during and in relation to":

> The phrase "during and in relation to" means that the firearm must have some purpose or effect with respect to the crime charged in Count 15. In other words, the firearm must facilitate or further, or have the potential of facilitating or furthering the crime charged in Count 15 and its presence or involvement cannot be the result

of accident or coincidence. And as I instructed you earlier, "knowingly" means
voluntarily and intentionally, and not because of mistake or accident.

(Jury Instr., R. 144, PageID 451.) The jury rendered a guilty verdict. Therefore, the jury was persuaded that, at some point, Readus knew Black carried a firearm in relation to the Highway 64 Kroger robbery. Because of the district court's flawed instruction, however, the jury's verdict does not reflect *when* Readus knew so.

On appeal, Readus offers no argument regarding when—after the conclusion of the Highway 64 Kroger robbery—he learned that Black carried the firearm in relation to the robbery. And if Readus is attempting to argue that he never knew Black carried the firearm in relation to the robbery, his arguments pose sufficiency of the evidence questions not raised in his briefing. Readus does not explain how his "advance knowledge" affects the jury's determination that he knew Black carried the firearm in relation to the fifth robbery. Considering the evidence at trial— that Black confided in Readus regarding his solo robberies and that Readus drove Black to four robberies prior to the Kroger robbery, served as a "lookout" during those robberies, and witnessed Black tuck the firearm into his waistband prior to each robbery—there is no reasonable probability that a proper "advance knowledge" instruction would have altered the jury's findings regarding whether Readus knew Black's firearm was carried "in relation to" the robbery. Thus, the district court's incomplete instruction was harmless error.

IV.

For the foregoing reasons, we affirm Readus's conviction for aiding and abetting the carrying of a firearm in relation to a crime of violence in violation of 18 U.S.C. § 924(c).