RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 17a0050p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ERIC GOOCH,

*Defendant-Appellant.*

No. 15-4360

_____

Appeal from the United States District Court for
the Northern District of Ohio at Cleveland.
No. 1:13-cr-00282—Solomon Oliver, Jr., Chief District Judge.

Argued: January 27, 2017

Decided and Filed: March 2, 2017

Before: GUY, CLAY, and GRIFFIN, Circuit Judges.

_____

**COUNSEL**

_____

**ARGUED:** Kenneth P. Tableman, KENNETH P. TABLEMAN, P.C., Grand Rapids, Michigan,
for Appellant. Daniel R. Ranke, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio,
for Appellee. **ON BRIEF:** Kenneth P. Tableman, KENNETH P. TABLEMAN, P.C., Grand
Rapids, Michigan, for Appellant. Daniel R. Ranke, UNITED STATES ATTORNEY'S OFFICE,
Cleveland, Ohio, for Appellee.

_____

**OPINION**

_____

RALPH B. GUY, JR., Circuit Judge. Defendant Eric Gooch appeals his jury
convictions and sentences for conspiracy to obstruct commerce by means of robbery,

obstructing commerce by means of robbery, armed bank robbery, and carrying a firearm during the commission of a crime of violence. We affirm.

**I.**

Defendant helped plan armed robberies of a discount store and two banks. During the discount store robbery, defendant accompanied two others to the business in a getaway car. Defendant planned to enter, but changed his mind. Defendant witnessed Shawn Caldwell give a firearm to codefendant Larnell Tripp, who robbed the cashier and the business's safe at gunpoint. A month later, defendant, Caldwell, and Greg Williams robbed a bank. Caldwell remained in the car while defendant and Williams brandished firearms and robbed the bank's vault. Three weeks later, defendant accompanied Caldwell and Williams to another bank, but remained outside the bank entrance. Williams robbed the bank at gunpoint, placing the firearm against the bank manager's head and pistol-whipping a security guard. Defendant neither admitted nor denied knowing prior to the robbery that Williams would use a firearm.

The prosecution charged defendant in a seven-count indictment consisting of two counts of conspiracy to obstruct commerce by means of robbery, a.k.a. "Hobbs Act robbery" (18 U.S.C. §§ 1951(a), 1951(b)(1), and 2); three counts of using, carrying and brandishing a firearm during and in relation to a crime of violence (18 U.S.C. §§ 924(c)(1)(A) and 2); and two counts of armed bank robbery (18 U.S.C. §§ 2113(a), 2113(d), and 2).[1] Although the district court initially adjudged defendant incompetent to stand trial, he later passed multiple competency evaluations.

Defendant filed and subsequently withdrew notice of his intent to present evidence that he was not guilty by reason of insanity. Defendant also sought to represent himself. The district court engaged defendant in an extended self-representation colloquy and

---

[1]The prosecution indicted defendant alongside codefendants Larnell Tripp, Jr., and Ashley White. Other participants in the robberies at issue – Shawn Caldwell and Greg Williams, Jr. – pleaded guilty to their involvement and separately appealed their sentences. Defendant Gooch is the sole party to this appeal.

allowed him to self-represent with appointed counsel as standby. Defendant cross-examined some witnesses but did not present an affirmative defense. He instead moved for a judgment of acquittal based on insufficient evidence, which the district court denied. The jury found defendant guilty, and the district court sentenced him to 664 months' incarceration.

On appeal, defendant challenges the sufficiency of the evidence that he aided and abetted the discount store robbery and second bank robbery, alleges the district court erred in allowing him to self-represent and in sentencing him to consecutive sentences on his § 924(c) convictions, and argues that Hobbs Act robbery is not a crime of violence.

**II.**

*a. Sufficiency of the Evidence*

We review the sufficiency of the evidence for a conviction "in the light most favorable to the prosecution" to determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Circumstantial evidence alone may sustain a conviction. *United States v. Tarwater*, 308 F.3d 494, 504 (6th Cir. 2002).

Aiding and abetting in the carrying of a firearm during commission of a crime of violence requires that the defendant "associate himself with the venture, that he participates in it as something he wishes to bring about, and that he seek by his action to make it succeed." *United States v. Lowery*, 60 F.3d 1199, 1202 (6th Cir. 1995) (quoting *United States v. Lawson*, 872 F.2d 179, 181 (6th Cir. 1983)). The prosecution must show that defendant had advance knowledge that a firearm would be used in the course of the crime. *Rosemond v. United States*, 134 S. Ct. 1240, 1249 (2014). The intent requirement of aiding and abetting "preserves the distinction between assisting the predicate . . . crime and assisting the broader § 924(c) offense." *Id.* at 1248.

> ### i.   *Discount Store Robbery*

Defendant argues that he was merely present during Tripp's armed robbery of the discount store and therefore not guilty as an aider and abettor. *See United States v. Winston*, 687 F.2d 832, 835 (6th Cir. 1982). The record undermines his claim. Defendant admitted, and his codefendants corroborated, that he helped plan the robbery and witnessed Caldwell give Tripp a firearm. Active participation in the planning phase of an armed robbery constitutes intent to bring about the offense. *See Phifer v. United States*, 221 F.3d 1335, 2000 WL 924451, at *2 (6th Cir. 2000) (unpublished table decision) (affirming conviction for aiding and abetting armed robbery where defendant knew of principal's intent to rob victim at gunpoint). The prosecution thus put forth sufficient evidence that defendant aided and abetted the armed robbery of the discount store.

> ### ii.   *Second Bank Robbery*

No testimony or other record evidence established – or rebutted – that defendant knew Williams possessed a firearm during the second bank robbery. The prosecution relies on defendant's participation in the previous two armed robberies and knowledge that firearms figured in both crimes to argue that defendant had advance knowledge Williams would use a firearm in the last bank robbery.

We have reversed § 924(c) convictions where jury instructions were insufficiently clear as to the defendant's intent to aid an armed offense. *United States v. Henry*, 797 F.3d 371, 374-77 (6th Cir. 2005) (applying plain error review to unpreserved jury instruction issue). *Henry* established that the intent instruction must go to the entire crime – the predicate offense and the violence component under § 924(c) – such that the jury convicts the defendant of *armed* bank robbery. *Id*. at 374.

Here, the jury instructions amply apprised the jurors that they must find defendant "knew in advance that his confederate would brandish, carry, or use a firearm during the

robbery." We presume that jurors follow the district court's instructions. *United States v. Lester*, 238 F. App'x 80, 83 (6th Cir. 2007) (collecting cases). Defendant's participation in the two prior armed robberies with most of the same codefendants is strong circumstantial evidence that he was aware of the group's *modus operandi* of using firearms in the commission of robberies. Viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could find that defendant had advance knowledge Williams would use a firearm during the final bank robbery. Sufficient evidence therefore supported defendant's aiding-and-abetting convictions.

###### b. Right to Counsel

Where a defendant asserts a violation of the right to counsel, we review the district court's factual findings for clear error and its legal conclusions *de novo*. *United States v. Cromer*, 389 F.3d 662, 679 (6th Cir. 2004). We have recognized that a district court's decision that a mentally compromised defendant may self-represent "merits deference." *United States v. Stafford*, 782 F.3d 786, 791 (6th Cir. 2015).

Defendant claims the district court deprived him of his right to counsel by allowing him to self-represent when he was incapable of giving a knowing and intelligent waiver. *See Faretta v. California*, 422 U.S. 806, 835 (1975). In this circuit, district courts must conduct a colloquy akin to that in section 1.02 of the *Bench Book for United States District Judges*. *See United States v. McBride*, 362 F.3d 360, 366 (6th Cir. 2004); *see also United States v. McDowell*, 814 F.2d 245, 249-50 (6th Cir. 1987).

The district court's discussion with defendant coincided nearly verbatim with the colloquy provided in the *Bench Book*. The district court also thoroughly admonished defendant that a trained lawyer could better represent him and that it was unwise to self-represent. Defendant nevertheless chose to represent himself with counsel as standby. Whether he chose wisely is not the issue on appeal. *See Godinez v. Moran*, 509 U.S. 389, 400 (1993); *see also United States v. Dubrule*, 822 F.3d 866, 880 (6th Cir. 2016)

("[G]iven the frequency with which *pro se* defendants . . . espouse strange [legal] theories, we decline to hold that the district court abused its discretion by failing to order a competency hearing on the basis of strange statements contained in a few . . . pre-trial motions.").

Defendant asserts he was mentally incompetent to waive his right to representation. Because he has not appealed the district court's competency ruling, it is not before us. Nevertheless, the record shows that the district court gave, and defendant seized, abundant opportunities to raise the issue of his competency. Although an initial evaluation found defendant incompetent to stand trial, each of the multiple subsequent evaluations and hearings found that he was competent despite certain "malingering" behaviors. With the assistance of standby counsel, defendant moved for a competency evaluation soon after asserting his right to self-represent. The district court again found him competent.

The competency standard for standing trial is identical to the standard for self-representation. *Godinez*, 509 U.S. at 396-97. It is immaterial that the district court did not review defendant's competency with a specific eye toward self-representation: it adjudged him mentally competent, and found that his waiver of the right to counsel was knowing and intelligent. The district court did not deny defendant the right to counsel by allowing him to self-represent.

### c. Consecutive Sentencing

Defendant challenges the district court's imposition of consecutive 25-year sentences for his multiple § 924(c) convictions. He raises this argument solely to preserve it for appeal to the Supreme Court of the United States. Defendant contends that the Supreme Court wrongly decided *Deal v. United States*, 508 U.S. 129 (1987). There, the Court held that when a defendant is convicted of multiple § 924(c) offenses in the same case, each conviction is a second or subsequent conviction for purposes of § 924(c),

allowing multiple consecutive sentences. *Deal* is still good law, and we are bound by the decision unless and until the Supreme Court overrules it. *See Hohn v. United States*, 524 U.S. 236, 252-53 (1998).

### d. Crime of Violence

Defendant contends that a Hobbs Act conviction does not qualify as a crime of violence under § 924(c)(3). Because defendant did not argue this issue below, we review it for plain error. *United States v. Olano*, 507 U.S. 725, 732-35 (1993).

Liability for a crime of violence under § 924(c)(3) attaches where the predicate offense is a felony and

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3). To determine whether a conviction offense is a "crime of violence," we apply a categorical approach "focus[ing] on the statutory definition of the offense, rather than the manner in which the offender may have violated the statute in a particular circumstance." *United States v. Rafidi*, 829 F.3d 437, 444 (6th Cir. 2016) (quoting *United States v. Denson*, 728 F.3d 603, 607 (6th Cir. 2013)). Where, as here, a defendant is convicted of violating a divisible statute, we review a narrow category of documents to determine which portion the defendant violated. *See id.*

> The Hobbs Act provides that

> Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

18 U.S.C. § 1951(a).  It goes on to define robbery as

> the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.

18 U.S.C. § 1951(b)(1).  It defines extortion as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right."  18 U.S.C. § 1951(b)(2).

Defendant contends that one can satisfy the offense elements of the Hobbs Act without using, attempting, or threatening physical force against the person or property of another as required by § 924(c)(3)(A).  For example, defendant posits that one could nonviolently extort property from someone under color of official right.  This is only so if the Hobbs Act is indivisible, i.e., if Hobbs Act extortion and Hobbs Act robbery are one and the same offense.  *See Rafidi*, 829 F.3d at 444.

Defendant relies on *Mathis v. United States* to argue that the Hobbs Act is indivisible because robbery and extortion are alternative means of violating the statute rather than distinct offenses.  136 S. Ct. 2243 (2016).  In *Mathis*, the Supreme Court considered a state burglary statute containing "alternative ways of satisfying a single locational element," *id*. at 2250, and held that crimes of conviction encompassing a wider range of conduct than the generic offense cannot qualify as predicate offenses for sentencing enhancement under the Armed Career Criminal Act, *id*. at 2251.  A single crime of conviction under the Hobbs Act could not satisfy the elements of both robbery and extortion:  the former requires a taking from another "against his will," while the latter is a taking "with his consent."  *See* 18 U.S.C. § 1951(b)(1)-(2).  This difference goes not to the mere means of violating the Hobbs Act, but to "the 'constituent parts' of [the] crime's legal definition – the things the 'prosecution must prove to sustain a

conviction.'"   *Id*. at 2248 (quoting Black's Law Dictionary 634 (10th ed. 2014)). Accordingly, *Mathis* is inapplicable.

That different portions of § 1951(b) provide the distinct elements of robbery and extortion suggests the statute is divisible.   In *Rafidi*, we interpreted 18 U.S.C. § 111, which "sets forth three separate crimes" – a misdemeanor, a felony, and an aggravated felony.   *Id*. at 445 (quotation omitted).   Because the defendant in *Rafidi* was charged with, and convicted of, violating § 111(b), the aggravated felony, we looked to the elements of § 111(b) *only*.   *Id*. ("We thus consider whether § 111(b) – and not § 111(a), by itself – has as an element the use, attempted use, or threatened use of physical force against the person or property of another." (quotation omitted)).   Applying *Rafidi*'s approach, we conclude that § 1951 is a divisible statute setting out separate crimes of Hobbs Act robbery and Hobbs Act extortion.

Where a divisible statute "could be violated in a way that would constitute a crime of violence and in a way that would not, we look beyond the statutory language and examine a limited set of documents to determine whether the conviction necessarily depended on the commission of a crime of violence."   *Rafidi*, 829 F.3d at 444 (quotations omitted); *see also Shepard v. United States*, 554 U.S. 13, 19-23 (2005) (discussing relevant documents).   The indictment charged defendant with "Conspiracy to Commit Hobbs Act Robbery" and "Hobbs Act Robbery."   The jury instructions referred to "robbery as that term is defined in [18 U.S.C.] § 1951(b)(1)."   We thus consider only the portion of the Hobbs Act defining robbery for the elements of the conviction offense.

A conviction under § 1951(b)(1) requires a finding of "actual or threatened force, or violence, or fear of injury, immediate or future."   Section 1951(b)(1) clearly "has as an element the use, attempted use, or threatened use of physical force against the person or property of another" as necessary to constitute a crime of violence under § 924(c)(3)(A). The jury therefore convicted defendant of a crime of violence.

Other circuits have unanimously acknowledged Hobbs Act divisibility and found that Hobbs Act robbery constitutes a crime of violence. In *United States v. Hill*, the Second Circuit held that the defendant committed "Hobbs Act robbery," and looked to the definition of robbery in § 1951(b)(1) for the elements of the offense. 832 F.3d 135, 138-39 (2d Cir. 2016). The Second Circuit rejected the defendant's argument that one could commit Hobbs Act robbery by "putting the victim in fear of injury" without violence or the threat of violence. *Id*. at 142-43. It further noted that a hypothetical nonviolent violation of the statute, without evidence of actual application of the statute to such conduct, is insufficient to show a "realistic probability" that Hobbs Act robbery could encompass nonviolent conduct. *Id*. at 139-40, 142-43 (citing *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)). Five other circuit courts have reached similar conclusions. *See United States v. Anglin*, 846 F.3d 954, 964-65 (7th Cir. 2017); *United States v. Howard*, 650 F. App'x 466, 467-68 (9th Cir. 2016); *In re Saint Fleur*, 824 F.3d 1337, 1340 (11th Cir. 2016); *United States v. House*, 825 F.3d 381, 387 (8th Cir. 2016); cf. *United States v. Robinson*, 844 F.3d 137, 141-44 (3d Cir. 2016) (defendant's Hobbs Act robbery conviction is a § 924(c) crime of violence because he was simultaneously convicted of brandishing a firearm during the robbery), *id*. at 150-51 (Fuentes, J., concurring) (Hobbs Act robbery is categorically a crime of violence under § 924(c)).

We join our sister circuits in ruling that Hobbs Act robbery constitutes a crime of violence. The district court did not plainly err in sentencing defendant under § 924(c).

**AFFIRMED**.