**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 19a0618n.06

Case Nos. 18-3784/3859

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

<table>
<tr><td>

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

WILLIAM HOLMES (18-3784); DEMON
CARTER (18-3859),

    Defendants-Appellants.

</td><td>

)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)

</td><td>

**FILED**
Dec 16, 2019
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF
OHIO

**OPINION**

</td></tr>
</table>

BEFORE: SUTTON, NALBANDIAN, and READLER, Circuit Judges.

NALBANDIAN, Circuit Judge. Hooded gunmen robbed two Cleveland Dollar Tree stores a collective three times in 2016. A jury convicted William Holmes as the principal robber and Demon Carter, a Dollar Tree employee, as Holmes's inside man. Both Holmes and Carter appeal their convictions, and Holmes appeals his sentence. We do not find their arguments persuasive and affirm.

I.

Almetrice Scriven and Demon Carter closed the Miles Avenue Dollar Tree store around 8:00 PM on May 14, 2016. The store's closing procedures required Scriven, an assistant manager, to secure the day's cash receipts inside a safe in the store's office—a passcode secure room that only managers had access to. Next, Scriven was responsible for arming the store's alarm and exiting the store during the brief period allowed by the alarm. None of these internal procedures

were available publicly. During the closing process on May 14, Scriven asked Carter to close the metal shutters that covered the glass windows on the front of the store. While Carter was outside closing the shutters, a hooded man armed with a semiautomatic handgun ran up to the store's front door and pulled the door open in a struggle with Scriven. The robber directed Scriven to open the office door, open the safe, and fill a bag with money. The robber then fled. Scriven immediately called 911 from the store's phone. During the call, Carter returned and told Scriven that "a guy in all black" chased him around the block. (R. 74, Trial Tr. at PageID # 559.)

On June 4, 2016, neither Scriven nor Carter was on duty at the Miles Avenue Dollar Tree. Instead, Eboni Ervin, an assistant manager, and Jada Perkins worked that day. Both Ervin and Perkins had worked with Carter and were friends with him. Shortly before closing, Carter called Perkins to ask what she was doing after work. Ervin told Perkins to ask Carter for a ride home and Carter agreed to do so. As closing time approached, Carter arrived at the store and called Perkins's cell phone and the Dollar Tree landline many times, asking what was "taking so long." (R. 76, Trial Tr. at PageID # 891–92, 895–96.) Perkins wasn't the only person Carter called that evening. After calling Holmes ten times that day already, Carter called Holmes at 7:57 PM for a seven-minute phone call. (Ex. 823.) After quickly calling the store's landline, Carter called Holmes again at 8:05 PM for a six-minute call. (*Id.*) At 8:10 PM, while Ervin was closing the metal shutters, a man ran up, grabbed Perkins by her hair, struck Perkins in the head with a black handgun, and told Ervin she had two minutes to get back inside the store. Ervin reentered the store with the robber, entered the office, opened the safe, and filled a bag with money. While all of this was going on, Carter fled the scene in his vehicle.

On June 19, 2016, a third robbery occurred at the Dollar Tree on East 116th Street in Cleveland. Carter neither worked at this location nor was present when the robbery occurred.

Nine days later, a federal grand jury returned a six-count indictment against Holmes and Carter. The indictment charged both Holmes and Carter with conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a), and two substantive counts of Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a) and (b)(1), for the May 14 and June 4 robberies (the "first robbery" and "second robbery"). The indictment also charged Holmes with a count of Hobbs Act robbery for the June 19 robbery (the "third robbery") and two counts of using, carrying, and brandishing a firearm during the second and third robberies, in violation of 18 U.S.C. § 924(c)(1)(A).

The government tried Holmes and Carter jointly. Holmes moved in limine to exclude several photos posted on his Facebook page depicting Holmes, dressed similarly to the alleged robber, with wads of cash, and separately showing money, a gun, and snacks on a table. Holmes argued that Federal Rules of Evidence 401, 403, and 404(b) prohibited the government from using the photos at trial. The district court granted Holmes's motion for six images but overruled the motion on the remaining six images. Without objection from Holmes, the government also admitted several photographs from Holmes's Facebook page that show Holmes wearing the same clothing and shoes as the robber. Following the close of the government's case, Holmes and Carter jointly moved for acquittal on all counts. The district court granted their motion on the conspiracy charge but denied the motion for all other counts. The jury ultimately convicted Holmes and Carter on all remaining counts and this appeal follows.

II.

Holmes raises three issues on appeal. He argues the district court abused its discretion in admitting several photographs from Holmes's Facebook profile into evidence; he is entitled to resentencing under the First Step Act of 2018; and Hobbs Act robbery is not a crime of violence under 18 U.S.C. § 924(c). We discuss each argument in turn.

A.

Holmes first argues that the district court abused its discretion in admitting Exhibits 614, 616, 617, 618, 619, and 620. He claims that Federal Rule of Evidence 403 mandates exclusion of these photos. Rule 403 permits a trial court to exclude otherwise relevant evidence if unfair prejudice substantially outweighs the evidence's probative value. As Holmes's framing of the issue suggests, we review a district court's denial of a motion in limine for abuse of discretion.[1] *United States v. Asher*, 910 F.3d 854, 860 (6th Cir. 2018). And in conducting this inquiry, "we review the admitted evidence 'in the light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect.'" *Id*. (quoting *United States v. Carney*, 387 F.3d 436, 451 (6th Cir. 2004)).

This Court has long recognized the inference that possessing recently stolen property connects the possessor to the crime. *United States v. Johnson*, 741 F.2d 854, 857 (6th Cir. 1984). And as we said recently, "temporal proximity increases a prior act's probative value." *Asher*, 910 F.3d at 861. All six photos have significant probative value because they show Holmes possessing large amounts of worn currency and were uploaded shortly after the robberies.[2] In fact, we found

---

[1] Holmes contends that there is an "on-going dispute in this circuit concerning the proper standard of review of Rule 404(b) evidence." (Holmes Br. at 17 (citing *United States v. Carter*, 779 F.3d 623, 625 (6th Cir. 2015).) But as the district court said, "404(b) [] is not the issue." (R. 74, Trial Tr. at PageID # 489.) As we discuss below, Holmes's Facebook photos don't qualify as propensity evidence. And for what it's worth, we've clarified that there isn't much of a dispute regarding the standard of review for 404(b) claims. *See United States v. Mandoka*, 869 F.3d 448, 456–57 (6th Cir. 2017).

[2] Exhibit 614 was uploaded to Facebook two days after the first robbery. (R. 78, Trial Tr. at PageID # 1461.) Exhibit 616 was uploaded to Facebook the day after the second robbery. (R. 128-1, Notice of Trial Exs. at PageID # 2832–33.) Exhibit 617 was uploaded to Facebook two days after the second robbery. (*Id*. at PageID # 2835–36.) Exhibit 618 was also uploaded to Facebook two days after the second robbery. (*Id*. at PageID # 2838–39.) Exhibit 619 was uploaded to Facebook the day after the third robbery. (*Id*. at PageID # 2841–42.) And Exhibit 620 was uploaded to Facebook a week after the third robbery. (Holmes Br. at 14.)

almost identical evidence probative of Hobbs Act robberies of Dollar General stores in Michigan. *See United States v. Pearson*, 746 F. App'x 522, 524 (6th Cir. 2018). Exhibit 617 has even greater probative value because it shows a firearm similar to the firearms used by the robbers in all three robberies. This is because evidence establishing similarities between uncharged conduct and charged conduct can establish the identity of the perpetrator. *See United States v. Clay*, 667 F.3d 689, 699 (6th Cir. 2012).

Holmes challenges the probative value of this evidence by arguing that the government failed to prove that the photos depict *stolen* cash. So no connection exists between this cash and the robberies. He also argues that the timestamp provided by Facebook only shows when the photo was uploaded, not when it was taken. So we can't be sure that these photos establish a temporal proximity between their content and the robberies. Finally, Holmes argues that we must discount the probative value of these photos because Ervin's testimony about Holmes's distinctive shoes and clothing already established his identity, so these photos were cumulative.

Holmes misstates the standard for relevancy. To be probative, evidence need only have "any tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401. So the photos need not conclusively establish that Holmes was the person who committed the Dollar Tree robberies to be probative. One photo of Holmes possessing a large amount of worn, small denomination currency may not have much probative value in linking him to the Dollar Tree robberies. But the fact that he posted many of these photos, and all shortly after the robberies occurred, reduces the possibility that Holmes obtained the depicted currency in a manner unconnected to the robberies. *Cf. United States v. York*, 933 F.2d 1343, 1350 (7th Cir. 1991) ("The man who wins the lottery once is envied; the one who wins it twice is investigated.") (overruled on other grounds); 2 J. Wigmore, Evidence § 302 at 241 (Chadbourn rev. 1979) ("the

recurrence of a similar result . . . tends to establish . . . the presence of the normal, i.e. criminal, intent accompanying such an act . . . .”). Finally, it is true that we must discount the probative value of evidence when that evidence is cumulative. *Old Chief v. United States*, 519 U.S. 172, 183 (1997). But that discount is only equal to the probative value of the evidence already admitted. *Id*. That Holmes owned the same unique shoes and clothing as the perpetrator is probative of identity. But it does not conclusively establish that Holmes was the perpetrator. So even after discounting for the clothing and shoe evidence, the photos depicting cash still have significant probative value.

To warrant exclusion, unfair prejudice must *substantially outweigh* the photos' significant probative value—Holmes must show extremely unfair prejudice. Fed. R. Evid. 403. But there is almost no unfair prejudice resulting from the photos posted on Holmes's Facebook page. So the district court did not abuse its discretion in admitting these photos.

We note first that Rule 403 looks only to *unfair* prejudice. Almost all evidence presented by the government will prejudice a criminal defendant. Rule 403 warrants exclusion only when there is a risk that the jury will use this evidence impermissibly. *See United States v. Guthrie*, 557 F.3d 243, 250 (6th Cir. 2009) (“Within the context of Rule 403, unfair prejudice does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest a decision on an improper basis.”) (cleaned up).

Holmes suggests that admission of the Facebook photos led to the jury engaging in an impermissible propensity line of reasoning. Normally, unfair prejudice encompasses evidence used for propensity purposes. *Old Chief*, 519 U.S. at 180. But the Facebook photos don't qualify as propensity evidence. Impermissible character evidence is “evidence of a crime, wrong, or other act” used to prove “a person's character in order to show that on a particular occasion the person acted in accordance with the character.” Fed. R. Evid. 404(b). None of the images at issue are used

6

to establish an independent character trait that Holmes allegedly acted in accordance with. Rather, these photos show that Holmes possessed the fruits of his crimes and link him to the charged offenses. So the photos are circumstantial—not propensity—evidence. William P. Richardson, The Law of Evidence § 111, at 68 (3d ed. 1928) ("Evidence of some collateral fact, from which the existence or non-existence of some fact in question may be inferred as a probable consequence, is termed circumstantial evidence.").

Holmes also argues that these photos show him "in a bad light and give jurors a negative image of Holmes." (Holmes Br. at 20.) But there is nothing inherently criminal or even bad about possessing a firearm. *See District of Columbia v. Heller*, 554 U.S. 570, 595 (2008). The same goes for possessing cash or snacks. (Holmes Br. at 19 ("There is no inference that possessing cash means anything, other than the possessor had cash.").) These otherwise innocuous photos prejudice Holmes only because of their temporal proximity to the robbery. But that prejudice is exactly the kind of prejudice resulting from all probative evidence in a criminal trial—implication in the charged conduct—so it is not *unfair prejudice*. *See Guthrie*, 557 F.3d at 250. Given the substantial probative value of Holmes's Facebook photos and the lack of unfair prejudice, the district court did not abuse its discretion in admitting these photos into evidence.

B.

Next, Holmes argues that he is entitled to resentencing under the First Step Act of 2018. 18 U.S.C. § 924(c) imposes a mandatory minimum seven-year sentence if the perpetrator of a crime of violence brandishes a firearm. When the court sentenced Holmes, a "second or subsequent" § 924(c) violation carried a mandatory minimum twenty-five-year sentence that ran consecutively to the first. 18 U.S.C. § 924(c) (2012) (amended 2018). And we interpreted "second or subsequent" to encompass conduct covered by the same indictment as the first § 924(c)

violation, so long as that conduct occurred after the conduct supporting the first violation. *United States v. Soto*, 794 F.3d 635, 664 (6th Cir. 2015). So Holmes received a thirty-two-year sentence for his two § 924(c) convictions. But Congress has since removed the "second or subsequent" language from § 924(c) and replaced it with the requirement that the "prior conviction under [§ 924(c)] become final" before the twenty-five-year mandatory minimum applies. First Step Act of 2018, Pub. L. No. 115-391, § 403(a), 132 Stat. 5194, 5221–22 (2018). Holmes claims that he should benefit from this Congressional amendment. He says "it is well settled law that such newly enacted rules of criminal procedure are to be applied to cases pending on direct review or not yet final." (Holmes Br. at 23.) But all the cases Holmes cites involve new interpretations of preexisting constitutional provisions, not statutory amendments. *See, e.g.*, *Griffith v. Kentucky*, 479 U.S. 314, 322 (1987).

Worse yet, applying the First Step Act's revision of § 924(c) to Holmes retroactively would ignore the plain text of the statute. Congress was clear when it stated that its amendment to § 924(c) "shall apply to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment." First Step Act of 2018 § 403(b). We must enforce the words of Congress. *Kisor v. Wilkie*, 139 S. Ct. 2400, 2419 (2019) ("[A] court must apply all traditional methods of interpretation to any rule, and must enforce the plain meaning those methods uncover."); *Lamie v. U.S. Trustee*, 540 U.S. 526, 536 (2004) ("We should prefer the plain meaning since that approach respects the words of Congress."). For Holmes, the question is not whether the First Step Act's amendment to § 924(c) applies retroactively. Congress answered that question: Yes, but only to offenders whose sentence had not been imposed as of December 21, 2018. First Step Act of 2018 § 403(b). The question here is whether Holmes's sentence was imposed before that date. The district court listed the "date of

imposition of judgment" for Holmes's offenses as August 15, 2018—four months before enactment of the First Step Act. (R. 97, J. in a Criminal Case at PageID # 2267.) And Holmes makes no argument that his sentence had not been imposed as of December 21, 2018. So he has forfeited the ability to claim that he qualifies under the First Step Act's narrow retroactivity provision. *Puckett v. Lexington-Fayette Urban Cty. Gov't*, 833 F.3d 590, 610–11 (6th Cir. 2016) ("To preserve an issue for appellate review, a party is required to address the issue in its appellate briefing.") (citing *Dye v. Office of the Racing Comm'n*, 702 F.3d 286, 304 (6th Cir. 2012)).

C.

Last, Holmes argues that Hobbs Act robbery does not qualify as a "crime of violence" under 18 U.S.C. § 924(c). Holmes concedes that because he failed to raise this argument below, plain error review applies. But the standard of review is irrelevant because binding precedent forecloses this argument. "In *United States v. Gooch*, we held that Hobbs Act robbery is a crime of violence under § 924(c)'s use-of-force clause." *United States v. Camp*, 903 F.3d 594, 597 (6th Cir. 2018) (citing 850 F.3d 285, 292 (6th Cir. 2017)). "This panel may not overrule the decision of another panel; the earlier determination is binding authority unless a decision of the United States Supreme Court mandates modification or this Court sitting en banc overrules the prior decision." *United States v. Moody*, 206 F.3d 609, 615 (6th Cir. 2000). The Supreme Court recently found § 934(c)(3)(B)'s residual clause definition of "crime of violence" unconstitutional. *See United States v. Davis*, 139 S. Ct. 2319, 2336 (2019). But that decision left § 924(c)(3)(A)'s elements clause definition of "crime of violence" intact. And we made clear in *Camp* that Hobbs Act robbery qualifies as a crime of violence under § 924(c)'s elements clause. *See* 903 F.3d at 597 ("[A] Hobbs Act robbery conviction 'requires a finding of actual or threatened force, or violence, or fear of injury, immediate or future,' to person or property, and therefore 'clearly has as an

*element* the use, attempted use, or threatened use of physical force against the person or property of another as necessary to constitute a crime of violence under § 924(c)(3)(A).'") (emphasis added) (quoting *Gooch*, 850 F.3d at 291–92). So *Gooch* remains good law and forecloses Holmes's argument.

III.

Carter raises only one issue on appeal: that the government's evidence was insufficient to sustain his conviction for aiding and abetting either Hobbs Act robbery. We review challenges to the sufficiency of the evidence de novo. *United States v. Algee*, 599 F.3d 506, 512 (6th Cir. 2010). And "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The "evidence need not remove every reasonable hypothesis except that of guilt." *United States v. Hughes*, 505 F.3d 578, 592 (6th Cir. 2007). And circumstantial evidence alone can be enough to sustain a conviction. *United States v. Blackwell*, 459 F.3d 739, 760 (6th Cir. 2006).

18 U.S.C. § 2 has two components: the defendant must (1) take an affirmative act in furtherance of the underlying offense (2) with intent to facilitate the offense's commission. *Rosemond v. United States*, 572 U.S. 65, 71 (2014). If both elements are satisfied, an aider or abettor "is punishable as a principal." 18 U.S.C. § 2. Furtherance and facilitation of the offense only require assistance related to *one* of the underlying crime's phases or elements, and words, acts, encouragement, support, or presence can all be enough. *Rosemond*, 572 U.S. at 73; *Reves v. Ernst & Young*, 507 U.S. 170, 178 (1993). The Hobbs Act makes it a crime to "in any way or degree obstruct[], delay[], or affect[] commerce or the movement of any article or commodity in

10

commerce, by robbery[.]" 18 U.S.C. § 1951(a). To prevail, Carter must show that the government's evidence was insufficient to establish that he assisted with any of these elements.

Active participation in the planning of an armed robbery constitutes an intent to bring about the offense. *Gooch*, 850 F.3d at 288 (citing *Phifer v. United States*, 221 F.3d 1335 (Table), 2000 WL 924451, at *2 (6th Cir. 2000)). As Carter concedes, acquittal on the conspiracy charge did not prevent the jury from finding that he participated in planning the robberies. *United States v. Townes*, 512 F.2d 1057, 1058 (6th Cir. 1975) ("Conspiring to commit a crime with another and aiding and abetting in its substantive commission are distinct crimes."); (Carter Br. at 43.) Taken cumulatively, the government's evidence allows a rational juror to conclude that Carter helped Holmes plan the first and second robberies. So Carter's claim fails.

Most damning is the vast number of phone calls between Carter and Holmes on the days of the robberies. On the day of the first robbery, Carter and Holmes's cell phones connected seven times. (R. 78, Trial Tr. at PageID # 1334–35.) And Holmes connected with Carter's girlfriend's phone seven more times that day. (R. 82, Trial Tr. at PageID # 1913–16.) Carter's girlfriend testified that she did not connect with Holmes by phone that day. So viewing the evidence in the light most favorable to the jury's verdict, Holmes and Carter connected fourteen times on the day of the first robbery. Holmes and Carter communicated even more on the day of the second robbery. That day, Holmes and Carter's phones connected nineteen times. (Ex. 823.) These connections included a seven-minute call at 7:57 PM and a six-minute call at 8:05 PM. (*Id.*) Surveillance footage shows that the robbery began at 8:10 PM. (Ex. 204.) So Holmes and Carter were on the phone for eleven of the thirteen minutes just before the robbery, and *during the first minute* of the robbery. All the while, Carter was sitting in his car feet from where Holmes would enter the store to conduct the robbery.

Holmes exhibited knowledge of Dollar Tree's internal procedures in conducting the robberies. During the first robbery, the robber knew that Scriven, not Carter was the manager, the location of the store's office, the presence of the safe inside the office, that the manager alone had access to the office and safe, and that the safe, not the registers, contained the day's cash receipts. And during the second robbery, Holmes revealed his awareness of Dollar Tree's alarm protocol when he told Ervin that she had two minutes to let him inside the store. All of this contrasts with the third robbery—that Carter did not participate in—where the robbers had to ask who the manager was and ultimately had to take cash from the register because they could not gain access to the safe. Given their frequent communication, it is rational to conclude that Carter—a Dollar Tree employee with firsthand knowledge of these procedures—helped Holmes plan the robberies by providing this information to him. *See United States v. Owens*, 683 F.3d 93, 102 (5th Cir. 2012) (finding a large volume of phone calls between the defendant and perpetrator of the underlying offense probative of the government's theory that a robbery was an inside job); *United States v. Hamilton*, 334 F.3d 170, 181 (2d Cir. 2003) (finding a large volume of calls between the defendant and a drug dealer probative of the defendant's intent to warn the drug dealer and continue the drug operation).

A defendant's attempt to provide exculpatory statements that are false is evidence of a consciousness of guilt. *Kyger v. Carlton*, 146 F.3d 374, 381 n.3 (6th Cir. 1998) (citing *United States v. Quiroz*, 13 F.3d 505, 510 (2d Cir. 1993)). Carter provided several such statements. Carter tried to exonerate himself from any implication in the first robbery by telling police that a man wearing all black chased him around the block. But surveillance footage shows a man matching that description walking calmly past the front of the Dollar Tree at the same time he was allegedly chasing Carter. And Carter's own testimony about the alleged chase route conflicts with itself.

Carter also lied to the 911 operator he called during the second robbery about the vantage point from which he saw the robbery and his current location. And Carter again lied to police during his post-arrest interview when he disavowed calling 911, claimed that he did not possess a phone number registered in his name, and tried to disassociate himself from Holmes. A rational juror could conclude that Carter's making of these false statements establishes consciousness of guilt, bolstering the other evidence of Carter's involvement in the robberies.

We must view the evidence cumulatively. *Davis v. Lafler*, 658 F.3d 525, 533 (6th Cir. 2011) ("Pieces of evidence are not to be viewed in a vacuum; rather, they are viewed in relation to the other evidence in the case."). A rational juror could conclude that the cumulative evidence shows Carter helped Holmes carry out the first and second robberies by providing him inside information. So Carter's insufficient evidence claim fails.

IV.

For these reasons we AFFIRM Holmes's conviction and sentence as well as Carter's conviction.