NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0550n.06

Case No. 20-5255

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED**<br>Sep 28, 2020<br>DEBORAH S. HUNT, Clerk |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| JOHNNY NIXON, JR., | ) | TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | **OPINION** |
| | ) | |

BEFORE: COOK, BUSH, and NALBANDIAN, Circuit Judges.

NALBANDIAN, Circuit Judge. Johnny Nixon, Jr. appeals a jury verdict convicting him of robbery, conspiracy, and firearms offenses. He first challenges the sufficiency of the evidence for his Hobbs Act robbery conviction. Second, he challenges the district court's decision not to dismiss Count Seven of his indictment for lack of an adequate predicate offense. Because we find no merit in his arguments, we **AFFIRM**.

**I.**

The government charged Nixon and two other defendants in connection with three robberies and several firearms offenses taking place over a seven-day period in Tennessee. A jury convicted Nixon of six offenses: conspiracy to commit a Hobbs Act robbery (Count One) and Hobbs Act robbery of the Bells Express Truck Stop (Count 6) under 18 U.S.C. § 1951; the use and carry of a firearm during and in relation to the Hobbs Act robbery of the Bells Express Truck Stop (Count 7) under 18 U.S.C. § 924(c); and three counts of receiving a firearm while under indictment

(Counts 11 through 13) under 18 U.S.C. § 922(n). The jury did not convict Nixon on four other counts, including Hobbs Act robbery of two other businesses.

Nixon, Lacey Jeter, and Cordarious Baltimore robbed Bells Truck Stop.[1] While Jeter manned the getaway car, Nixon and Baltimore approached the store. Baltimore was wearing jeans, a pink hoodie, and grey tennis shoes and carrying a 9mm semi-automatic pistol; Nixon was wearing a black hoodie and dark jeans and carrying a revolver. Displaying the firearm, Baltimore demanded cash while Nixon stood at the door. After taking the money, they fled toward the getaway car. Once they were inside the car, Jeter mistakenly steered into a driveway that appeared to be a road, turned around in the yard, proceeded down another dead-end road, and turned around once more to escape. During this time, the cohort threw their outer garments out the window, including the pink hoodie and jeans. Officers recovered the pink hoodie, dark jeans, and gloves from the area near the Bells Truck Stop.

During the four-day trial, Jeter testified to Nixon's involvement in the robbery. Several witnesses corroborated Jeter's testimony about how the crime occurred. For example, Lawrence Reed testified about seeing the trio's getaway mishaps. Michelle Leals, who was the clerk at Bells Truck Stop, and one of her customers corroborated Jeter's testimony. And Tennessee Bureau of Investigation Agent Militza Kennedy found Nixon's DNA on the jeans recovered near Bells. For the defense, Rita Estes testified as an alibi witness that Nixon had stayed at an apartment in Jackson, Tennessee during April, though she could not remember if it had been for days or months.[2]

---

[1] We describe the facts in the light most favorable to the prosecution because this is a sufficiency of the evidence challenge. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

[2] The jury did not convict Nixon of four additional counts – two involving robbery of an F&D Quick Stop and a Discount Tobacco & More, respectively, and two involving the use of firearms in connection with those robberies. Jeter's testimony had pointed to Nixon's alleged involvement in those two additional robberies. The corroborating evidence, however, was stronger with regard to the truck stop robbery.

After trial, Nixon moved to dismiss Count Seven in light of *United States v. Davis*, 139 S. Ct. 2319 (2019), arguing that the indictment failed to sufficiently specify a valid predicate offense for his firearms charge. The district court denied the motion. On appeal, Nixon challenges the sufficiency of the evidence for his robbery and firearm convictions and the denial of his motion to dismiss Count Seven of the indictment.

**II.**

To determine whether there is sufficient evidence, we look to whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis omitted). "We draw all available inferences and resolve all issues of credibility in favor of the jury's verdict, and it is not necessary for us to exclude every reasonable hypothesis but guilt." *United States v. Avery*, 128 F.3d 966, 971 (6th Cir. 1997). "[A] defendant claiming insufficiency of the evidence bears a very heavy burden." *United States v. Abboud*, 438 F.3d 554, 589 (6th Cir. 2006) (citation and internal quotation marks omitted). A conviction will stand even if only circumstantial evidence supports it. *See United States v. Clark*, 928 F.2d 733, 736 (6th Cir. 1991).

Nixon argues that the jury should not have believed the government's "primary" witness—Lacey Jeter—because she was in a relationship with the co-defendant and had a plea agreement that incentivized her to lie in favor of the government. In Nixon's view, these facts so reduced Jeter's credibility that, when considered with the government's other evidence, the government had not provided "the support necessary to allow a reasonable juror to feel confident that a conviction based on Jeter's testimony would be accurate." (Appellant Br. at 17.) Nixon also argues that the pair of pants with his DNA found discarded near the Bells Truck Stop robbery does not

support conviction. He called his sister to testify that she had sent Nixon some of his clothes while he was evading arrest for another crime, and Nixon posited that the robber had intercepted the clothes and worn them for the crime.

Both arguments ultimately rest on witness credibility. After all, if the jury had disbelieved Jeter and believed Nixon's sister, it might have acquitted. When a sufficiency of the evidence argument rests on disputes about witness credibility, we give "special deference" to the jury's determination. *Brown v. Davis*, 752 F.2d 1142, 1147 (6th Cir. 1985). "Once a jury has 'ample opportunity' to hear the evidence impeaching a witness and still chooses to believe that witness, it is generally 'not for this Court to substitute its opinion for that of the jury in determinations of credibility.'" *United States v. Davis*, 306 F.3d 398, 410 (6th Cir. 2002) (quoting *United States v. Latouf*, 132 F.3d 320, 331 (6th Cir. 1997)).

Nixon argues that it was unreasonable for the jury to believe Jeter. But the jury was fully aware of the attacks on Jeter's credibility. The jury instructions explicitly reminded the jurors that Jeter was a co-conspirator whose testimony warranted cautious consideration. And the jury's split verdict shows that it carefully considered the evidence and reached independent conclusions on the various counts. *See, e.g.*, *United States v. Morales*, 655 F.3d 608, 633 (7th Cir. 2011); *United States v. Bradley*, 644 F.3d 1213, 1279–80 (11th Cir. 2011). The jury's decision to believe Jeter rather than Nixon's witnesses is not subject to second-guessing on appeal.

### III.

Nixon next argues that his seventh count of the indictment was flawed. We generally review this claim de novo. *See United States v. Superior Growers Supply, Inc.*, 982 F.2d 173, 177 (6th Cir. 1992) ("Whether an indictment adequately alleges the elements of the offense is a question of law subject to de novo review."). The government argues, however, that Nixon failed

to raise his motion to dismiss the indictment until after trial, and thus that it was untimely and waived, making it subject to plain error review.[3] But the district court exercised its discretion to consider Nixon's untimely motion, *see* Fed. R. Crim. P. 12(c)(3), and the government does not argue that the court abused its discretion in considering Nixon's motion. *See Soto*, 794 F.3d at 653–55. So we now turn to reviewing the merits of the legal argument.

Federal law creates minimum sentences for criminals who use or possess firearms "during or in relation to" or "in furtherance of" a "crime of violence." § 924(c)(1)(A). That means that conviction under § 924(c) requires not only the firearm use, but also a predicate offense that qualifies as a crime of violence. The law defines a "crime of violence" as any felony which "has as an element the use, attempted use, or threatened use of physical force against the person or property of another," *or* a felony "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." § 924(c)(3). The first definition is known as the "elements clause," and the second as the "residual clause." Last year, the Supreme Court invalidated the residual clause on constitutional grounds. *See Davis*, 139 S. Ct. at 2336. Thus, only crimes that satisfy the elements clause can be predicate offenses for a § 924(c) conviction.

Nixon argues that Count Seven of his indictment—the § 924(c) charge—is invalid because the jury might have thought they were basing his § 924(c) conviction on the Count 1 conspiracy charge as the predicate offense. But Nixon overlooks the clear language in Count Seven invoking Count Six as the predicate offense:

---

[3] Although the government characterizes this as a waiver argument, they do not allege that Nixon's omission was intentional. So the government's argument is better characterized as one of forfeiture. *See United States v. Olano*, 507 U.S. 725, 733 (1993) ("Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.'"); *United States v. Soto*, 794 F.3d 635, 655 (6th Cir. 2015) (noting that courts should not consider an untimely 12(b)(3) motion waived unless the "circumstances of the case indicate that the defendant intentionally relinquished a known right").

> On or about April 25, 2016, in the Western District of Tennessee, the defendants, . . . aided and abetted, each other, during and in relation to a crime of violence, specifically interference with commerce by threats or violence involving the Bells Express Truck Stop, at 9730 Highway 70, Bells, Tennessee, in violation of Title 18 United States Code, Section 1951, *specifically Count 6 of the Superseding Indictment*, which Count is realleged and incorporated by reference herein, did knowingly possess, use, carry and brandish a firearm, in violation of 18 U.S.C. §§ 2 and 924(c).

(R. 127, Second Superseding Indictment, PageID 287–88 (emphasis added).) And he disregards the district court's instruction that the jury could only convict on Count Seven if it found that Nixon committed the crime charged in Count Six. By describing and naming the correct predicate offense, the indictment and jury instruction left no confusion for the jury that the predicate offense was a crime of violence.[4] We **AFFIRM** the district court's order denying dismissal of the indictment.

## IV.

For these reasons, we **AFFIRM** the district court's judgment.

---

[4] *See United States v. Gooch*, 850 F.3d 285, 292 (6th Cir. 2017) ("We join our sister circuits in ruling that Hobbs Act robbery constitutes a crime of violence.")